NOT YET SCHEDULED FOR ORAL ARGUMENT

Nos. 25-1198, 25-1202, 25-1254 (consolidated)

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

SIERRA CLUB, et al.,
*Petitioners*,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al.,
*Respondents*.

---

Petition for Review of United States Department of Energy Order No. 202-25-7

---

**OPPOSED MOTION TO CONSOLIDATE AND TO GOVERN FURTHER PROCEEDINGS**

---

ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
ROBERT LUNDMAN
REBECCA JAFFE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
rebecca.jaffe@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.     Parties and Amici**

Petitioners in case no. 25-1198 are Sierra Club, Natural Resources Defense Council, Michigan Environmental Council, Environmental Defense Fund, Environmental Law and Policy Center, Vote Solar, Union of Concerned Scientists, Ecology Center, and Urban Core Collective. Petitioner in case no. 25-1202 is the State of Michigan. Petitioners in case no. 25-1254 are the States of Minnesota and Illinois.

Respondents are Chris Wright, Secretary of the United States Department of Energy, and the United States Department of Energy.

**B.     Rulings Under Review**

Petitioners challenge Department of Energy Order No. 202-25-7, which was issued on August 20, 2025.

**C.     Related Cases**

Under Circuit Rule 28(a)(1)(C), this case is related to *People of the State of Michigan v. United States Department of Energy*, Nos. 25-1159, 25-1160, 25-1162 (consolidated) (D.C. Cir.).

/s/ *Rebecca Jaffe*
REBECCA JAFFE

Counsel for Federal Respondents

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........................................................................................................... ii

TABLE OF CONTENTS ............................................................................... iii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 2

ARGUMENT ................................................................................................... 4

I. The Court should consolidate the Campbell 1 and Campbell 2 cases. ................................................................................................... 4

II. The Court should coordinate the briefing for the Campbell 1 and Campbell 2 cases. ......................................................................... 8

III. A Spring 2026 argument in the Campbell 1 cases is unlikely to be feasible, which supports consolidation and coordinated briefing. ................................................................................................. 9

CONCLUSION .............................................................................................. 10

CERTIFICATE OF COMPLIANCE ............................................................. 12

# INTRODUCTION

Federal Respondents Department of Energy (DOE) and Secretary of Energy Chris Wright respectfully move the Court to consolidate these cases with cases 25-1159, 25-1160, and 25-1162 and to set a coordinated briefing schedule for all the consolidated cases.

On May 23, 2025, the Secretary of Energy issued Order No. 202-25-3 (Campbell 1) under Section 202(c) of the Federal Power Act, 16 U.S.C. § 824a(c). In the Campbell 1 Order, the Secretary directed the J.H. Campbell coal-fired power plant in Michigan to continue operating; it had been scheduled to close on May 31, 2025. Petitioners challenged the Campbell 1 Order in cases 25-1159, 25-1160, and 25-1162. The Campbell 1 Order expired on August 21, 2025. On August 20, 2025, the Secretary of Energy issued Order No. 202-25-7 (Campbell 2) under Section 202(c) of the Federal Power Act, again directing the Campbell plant to continue operating. Petitioners challenge the Campbell 2 Order in these consolidated cases (Nos. 25-1198, 25-1202, and 25-1254).

The cases challenging the Campbell 1 and 2 Orders should be consolidated because both Orders were issued under the same statutory authority and both Orders direct the same coal plant to continue operating. Petitioners oppose this motion and instead propose holding the Campbell 2 cases in abeyance while the

1

Court adjudicates the Campbell 1 cases. That proposal will not provide the Court will a full picture of the issues, and it does not promote judicial economy. The Campbell 2 Order contains additional reasoning explaining the Secretary's rationale, and the Court should consider that reasoning. And Petitioners have already opened this door—they discuss the Campbell 2 Order in their opening Campbell 1 briefs.

Federal Respondents have conferred with counsel for the Midcontinent Independent System Operator and Consumers Energy, and both parties take no position on this motion.

**BACKGROUND**

On May 23, 2025, the Secretary of Energy issued the Campbell 1 Order under Section 202(c) of the Federal Power Act because he determined that an emergency exists in portions of the Midwest "due to a shortage of electric energy, a shortage of facilities for the generation of electric energy, and other causes." Campbell 1 at 1. So the Secretary ordered the J.H. Campbell coal-fired power plant in Michigan, which was scheduled to close on May 31, 2025, to continue operating for 90 days. Campbell 1 at 1.

In July 2025, the states and public interest organizations petitioned the Court to review the Campbell 1 Order. Case Nos. 25-1159, 25-1160, 25-1162 (consolidated). On October 10, 2025, the Campbell 1 Petitioners filed an

unopposed motion to establish a briefing schedule and format, and the Court entered that schedule in an order on November 20, 2025.[1] Under that schedule, opening briefs were due on December 19, 2025, and the United States' answering brief is currently due on February 24, 2026.

On August 20, 2025, the Secretary of Energy issued Order No. 202-25-7 (Campbell 2). The Secretary determined that the emergency conditions that led to the issuance of the Campbell 1 Order continued, "both in the near and long term," and so the Campbell plant "shall remain in operation" "to best meet the emergency and serve the public interest." Campbell 2 at 2, 7. The Campbell 2 Order expired on November 19, 2025. Campbell 2 at 9 ¶ H.[2]

In October 2025, the public interest organizations and states petitioned the Court to review the Campbell 2 Order. Case Nos. 25-1198, 25-1202, 25-1254 (consolidated).

---

[1] In their scheduling motion, Petitioners noted that they "intend[ed] to request consolidation of their petitions challenging the August Renewal [Campbell 2] with those challenging the original May Order [Campbell 1]." Petrs' Unopposed Mot. to Establish Briefing Schedule & Format, at 4, No. 25-1159 (filed Oct. 10, 2025).

[2] On November 18, 2025 (before the Campbell 2 Order expired), the Secretary issued Order No. 202-25-9 (Campbell 3) directing the Campbell plant to continue operating. The Public Interest Organization Petitioners filed suit to challenge Campbell 3 on January 22, 2026. *See* No. 26-1024.

3

## ARGUMENT

I. **The Court should consolidate the Campbell 1 and Campbell 2 cases.**

Consolidation is warranted because all the Campbell 1 and 2 cases share substantial factual and legal similarities, and consolidation will promote judicial economy. "When the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals." Fed. R. App. P. 3(b)(2). Although Federal Rule of Appellate Procedure 3(b)(2) references notices of appeal, courts have also applied the rule to petitions for review. *E.g., Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 400 F.3d 1278, 1279 (11th Cir. 2005) (sua sponte consolidating under Federal Rule of Appellate Procedure 3(b)(2) petitions that were "factually similar and procedurally identical"). This Court routinely consolidates petitions for review challenging related agency orders. *See, e.g., Panhandle E. Pipe Line Co. v. FERC*, 95 F.3d 62, 64 (D.C. Cir. 1996) ("In these consolidated petitions, five interstate natural gas pipelines and three of their customers request review of a series of orders issued by the Federal Energy Regulatory Commission."); *TransCanada Pipelines Ltd. v. FERC*, 878 F.2d 401, 404 (D.C. Cir. 1989) ("These sixteen consolidated petitions for review of decisions of the Federal Energy Regulatory Commission [] raise related jurisdictional questions.").

The Campbell 1 and 2 cases both challenge orders that the DOE Secretary issued under Section 202(c) of the Federal Power Act for the same power plant. Both the Campbell 1 and 2 cases concern the scope of the Secretary's authority under that statutory provision. *Compare*, *e.g.*, States Opening Br. at 3-4, No. 25-1159 (filed Dec. 19, 2025), *with* State of Michigan's Non-binding Statement of Issues to be Raised, No. 25-1202 (filed November 17, 2025). The Campbell 1 and Campbell 2 Orders, according to Petitioners, concern the same emergency identified by DOE. States Opening Br. at 25. And the parties in the Campbell 1 and 2 cases are identical. Given these similarities, consolidation is plainly warranted.[3]

Consolidation, instead of holding the Campbell 2 cases in abeyance as Petitioners propose, is appropriate because there are still differences between the Campbell 1 and 2 Orders that this Court should consider. While the Court "has inherent power to stay proceedings in control of its docket," *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) (cleaned up), the Court should not do so when the result will be that the Court is presented with an incomplete view of the issues.

---

[3] Some of the same Petitioners, including the Natural Resources Defense Council, Environmental Defense Fund, and Sierra Club, are challenging DOE's issuance of Section 202(c) emergency orders to keep the Eddystone plant in Pennsylvania operating, and those Petitioners have emailed the parties that they plan to move to consolidate the cases challenging the Eddystone 1 and 2 Orders. Nos. 25-1193, 25-1194, 25-1287, 25-1288.

5

The Campbell 2 Order has additional explanation of the importance of keeping the Campbell plant operating. The Campbell 1 Order is three pages long, and the Campbell 2 Order is over eight pages long. In addition, the Campbell 2 administrative record contains many documents that are not in the Campbell 1 administrative record. *Compare* Certified Index, No. 25-1159 (filed Sept. 8, 2025) (Campbell 1 record index with 23 documents) *with* Certified Index, No. 25-1198 (filed Jan. 23, 2026) (Campbell 2 record index with 54 documents).

While much of the reasoning in the Campbell 2 Order is presented in DOE's response to Petitioners' requests for rehearing of the Campbell 1 Order, Petitioners complain in their Campbell 1 opening briefs that DOE's rehearing response presents post hoc rationales. For example, the State Petitioners claim that DOE asserted "shifting rationales" in its Campbell 1 rehearing response and that DOE presented "*post hoc* justifications" to "bolster its deficient record." States' Opening Br. at 37-38; *see also* Public Interest Orgs.' Opening Br. at 17, No. 25-1159 (filed Dec. 19, 2025) (complaining that the rehearing response "asserted a new basis for having forced Campbell to operate"). If the Court were to rule on the adequacy of the rationale in Campbell 1 and decline to consider DOE's explanations in its rehearing response as post hoc, then the effect would be to just kick the can down the road until the Court lifts the abeyance in Campbell 2 and that case is litigated. That result is plainly inefficient.

6

The Court must also "weigh[] ... any potential prejudice to the parties" from an abeyance. *Utah by & through Cox v. Env't Prot. Agency*, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (Rao, J., statement). To be sure, "[w]hen the party challenging a rule does not oppose the agency's motion for abeyance, the court will generally presume there is no hardship and grant abeyance." *Id.* But, here, the United States would be prejudiced by an abeyance in the Campbell 2 cases.

Petitioners reference the Campbell 2 Order in their Campbell 1 opening briefs. For example, the Public Interest Organization Petitioners cite the Campbell 2 Order in their Campbell 1 brief and say that "[t]he Court can and should put an end to the Department's *continued* abuse of its authority." Public Interest Orgs.' Opening Br. at 2-3 (emphasis added); *see also id.* at 23 (discussing the Campbell 1 Order's "subsequent renewals," allegedly "animated" by the same "theory" as Campbell 1). The states, in turn, base this Court's jurisdiction on costs allegedly incurred under the Campbell 1 order that "continued to increase during Campbell II," environmental effects that "Campbell is causing[] and will continue to cause," and the assertion that orders subsequent to Campbell 1 "concern the same generation facility and address the same purported 'emergency.'" States Opening Br. at 19-20 & n.5, 24-25. The United States would be prejudiced if the Court issues a ruling that affects the Campbell 2 Order without giving the United States an opportunity to actually defend the Campbell 2 Order.

7

**II.     The Court should coordinate the briefing for the Campbell 1 and Campbell 2 cases.**

After consolidating the Campbell 1 and 2 cases, the Court should coordinate the briefing for the two sets of cases. The United States has presented two proposals to the parties. Under the United States' first proposal, Petitioners would file new opening briefs addressing both the Campbell 1 and 2 Orders, and then the United States would file one answering brief and Petitioners would file one reply. The United States prefers this option because it involves the fewest briefs for the Court to review, thus promoting judicial economy.

Alternatively, because the Petitioners already filed their initial opening briefs in the Campbell 1 cases, the United States' second proposal is that the Petitioners would file a supplemental brief addressing the Campbell 2 Order and the United States would file one response brief responding to both the opening briefs and the supplemental brief. This option would involve only one more (supplemental) brief for the Court to review, which again better promotes judicial economy compared to Petitioners' proposed abeyance (which will eventually require full briefing regarding the Campbell 2 Order).

Under either proposal, the briefing would be completed in time for an argument in Fall 2026. For example, if the Court enters a schedule by February 27, 2026, giving the Petitioners 60 days to refile their opening briefs or to file a Campbell 2 supplemental brief, the United States 60 days for its answering brief,

8

and 30 days for any reply, then the briefing (including submission of final briefs) would be complete by August 2026—well in time for an argument in October 2026.

### III. A Spring 2026 argument in the Campbell 1 cases is unlikely to be feasible, which supports consolidation and coordinated briefing.

Based on communications with Petitioners' counsel, it appears that Petitioners' primary interest in opposing the United States' proposals is that they want the Court to hold argument in Spring 2026 in the Campbell 1 cases. But even if the Court does not consolidate the Campbell 1 and 2 cases, the United States plans to and has good cause to seek an extension of its briefing deadline in the Campbell 1 cases, which would make a Spring 2026 argument unlikely.

The United States agreed to the Campbell 1 briefing schedule in early October 2025. The undersigned counsel did not know at that time that the lapse in

9

appropriations would last through November 13, 2025, and would cause cascading backlogs in her workload and the workloads of her colleagues.[4]

## CONCLUSION

The Court should consolidate the Campbell 1 and 2 cases and should order coordinated briefing for the consolidated cases.

---

[4] In addition, since the opening briefs were filed on December 19, 2025, the undersigned counsel has had many obligations that prevented her from working on the response brief in the Campbell 1 cases. For example, she was responsible for drafting the United States' response, which was due on December 30, 2025, to an emergency stay motion in *Environmental Defense Center v. Pipeline & Hazardous Materials Safety Administration*, No. 25-8059 (9th Cir.). She was also responsible for drafting the United States' answering brief, which was due on January 15, 2026, in *Center for Biological Diversity v. U.S. Department of Transportation*, No. 25-60282 (5th Cir.). She also reviewed and edited the answering brief in *South Carolina Coastal Conservation League v. U.S. Army Corps of Engineers*, No. 25-1797 (4th Cir.), which is due to be filed on January 27, 2026. She must also review and edit the answering brief, which is due on February 23, 2026, in *Citizens for Clean Air & Clean Water in Brazoria County v. U.S. Department of Transportation*, No. 25-60202 (5th Cir.). The undersigned counsel has also had substantial case management responsibilities, including a mediation assessment on January 9, 2026, in *Vashon Island Fair Skies v. Federal Aviation Administration*, No. 25-7373 (9th Cir.), and advising the agency regarding preparation of the administrative record and then lodging the certified index on January 13, 2026, in *Environmental Defense Center v. Pipeline & Hazardous Materials Safety Administration*, No. 25-8059 (9th Cir.). The United States plans to seek an extension of its Campbell 1 briefing deadline because of these and other obligations.

        Respectfully submitted,

        <u>/s/ *Rebecca Jaffe*</u>
        ADAM R.F. GUSTAFSON
        *Principal Deputy Assistant Attorney General*
        ROBERT N. STANDER
        *Deputy Assistant Attorney General*
        ROBERT LUNDMAN
        REBECCA JAFFE
        *Attorneys*
        Environment and Natural Resources Division
        U.S. Department of Justice

        *Counsel for Federal Respondents*

January 23, 2026
90-13-5-17962

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 2,329 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Rebecca Jaffe*
REBECCA JAFFE
Counsel for Federal Respondents